Case number 24161 Sarah Wilson et al versus Eric Gregory et al argument not to exceed 15 minutes per side. Ms. Caroline Hyatt, you may proceed for the appellant. Thank you. May it please the court, I'm Caroline Hyatt and along with Algar Hardstein, we represent the plaintiffs in this case. I would like to please reserve three minutes for rebuttal. Very well. Thank you. This case concerns the tragic death by suicide of Jack Hulsman on September 19, 2015. However, Mr. Hulsman's death was not only tragic but unnecessary. He was in the middle of a mental health crisis. He was delusional experiencing suicidal ideation and it was not safe for him to be alone. But the real tragedy here is that help was available but defendants Walsh and Gregory cut off his access to that aid and isolated him alone in his home with firearms, increasing the risk that he would commit suicide. The district court erred by failing to take the facts in the light most favorable to plaintiffs and thereby resolving factual disputes that can only be resolved by a jury. Plaintiffs have presented facts to support that the defendants' affirmative acts were reckless and deliberately indifferent and increased the risk of harm to Mr. Hulsman, thus violating the clearly established practice. All right, Ms. Hyatt, I'm really struggling to see what the clearly established law here is with respect to an officer's duty to prevent somebody from committing suicide in particular. There just has never been a case to that effect in our court and for purposes of qualified immunity, that seems to put you in a difficult position. I would respectfully disagree. In 2015, it was clearly established the state actors violate the 14th amendment when their affirmative acts increase the danger to which they are deliberately indifferent and that's exactly what happened here. Yeah, but you know levels of generality matter in qualified immunity analysis. We don't just start at some like really high level of generality because the more general the rule, the less guidance it provides the official in the moment. And so, I mean, I understand your point, but I mean it's just hard to see how there was specific guidance in this very difficult situation. The focus is on the contours of the right itself and here I think it's clear that the constitutional question at issue was beyond debate, which is what this court said was required recently in Wright v. Euclid. In determining whether a right was clearly established, we asked whether the precedents placed the constitutional question beyond debate and here the constitutional question is beyond debate. There is no dispute between any of the parties or the district court as to what elements apply in this case. A state-created danger claim regardless of what the foreseeable injury ends is satisfied when you have an affirmative act that increases the risk of suicide, a specific risk to that individual as opposed to a general risk to the public. I mean the rule itself is couched in terms of harm by third parties, right? The rule itself is. Well, in this case, the third party is Mr. Hulsman as opposed to the state. But he's not a third party. I mean an officer on the ground is not going to read that and think he's a third party. He's not a third party and so I mean I understand that one could say, hey, it makes perfect sense to extend it to this, but we have a rule that by its terms is inapposite. He's not a third party. I would disagree even though the cases that have specifically dealt with officers responding to a 911 call concerning someone at risk of suicide, they've showed us exactly what elements to apply. And I've never said that these elements don't apply. It's the same standard that applies in any other case regardless of exactly what the injury is. So in Cutlip, what the court said was that you have to show that they increased the risk that the plaintiff would kill himself and that law enforcement knowingly and unreasonably opted for a course of conduct that entailed a substantially greater total risk than the available alternatives. And here they were choosing between alternatives for what to do and they specifically put him at risk of a known danger. They were directly told this will put him at risk. Do not leave him alone. He will commit suicide if he is left alone and that's exactly what they did. And this sounds an awful lot like the Constitution as a fount of tort law. They can't significantly increase the risk. And I mean, believe me, what happened here, I mean, at least I read your brief and your view of the case and it is distressing. It truly is that somebody is like sitting in their cruiser for nine minutes while this is going on. But the Constitution isn't like, you know, a catch-all provision to make sure that, you know, every right has a remedy. It just isn't. I mean, state law has a role. And I mean, the court has told us the Constitution is not a fount of tort law. It's what it looks like here. I would disagree. And actually that to the state law claims. The state law standards are different. Even like this isn't a fount of tort law because the state law standards are lower than what this imposes. The 14th Amendment state danger theory has very narrow requirements about affirmatively acting and increasing the danger. And those affirmative acts are not required for a state tort. So what happened with the state claim? I mean, all you have to do is show the guy was, the defendant was reckless, right? Something to that effect? Correct. To overcome the 2744 immunity that municipal employees will generally be immune to, they have to have acted recklessly. And here the district court clearly erred in applying the wrong standard because the district court treated it as equivalent to deliberate indifference. And that is simply not true. The recklessness standard, according to the Supreme Court of Ohio, is the second restatement of torts definition, which specifically says knowing or having reason to know. So that doesn't need to be conscious. Correct. It's satisfied by either objective or subjective knowledge. And in fact, Farmer v. Brennan, the actual issue the United States Supreme Court was dealing with was what is the standard of deliberate indifference? And they specifically compare the differences between objective tort recklessness and subjective criminal recklessness. And they chose the higher standard. So this is clearly a lower standard, and the district court clearly erred in resolving them together. In addition, as you raised, the actions that can impose liability on a state tort are a lot broader than you have in state danger. Any omission is going to be enough as long as it was reckless. So you're looking at a much broader range of conduct by the defendant deputies for that. Can you just give us a quick summary of why you think it's an objective standard for recklessness under state law? Just real quick, walk us through why you think it's met on your view of the facts. Oh, why it's the facts and the like most favorable to plaintiff. Mrs. Hulsman told the defendants that her husband was suicidal. Defendant Greger actually admitted that his statement could be taken as a suicide threat. She specifically told them, he is not safe by himself, do not leave him alone, he will kill himself if he is alone. And then they isolated him. In addition, it's clear under the facts most favorable to plaintiff, that he did have access to the guns, there was only an obstacle. She had hidden them, not locked them away. And because of that, all he needed was an opportunity to look for. And while there's someone there, whether it was the defendant deputies, whether it was his with no one there, he had exactly the opportunity he needed to go and find it. And that's exactly what he did. So a jury could easily find that they were reckless to his risk of suicide when they chose to isolate him in his home, taking away aid that was currently there, aid that was potentially available in the form of the EMS, not staying themselves. They were specifically warned that he would kill himself and that's exactly what happened. What's in the record as to what Ms. Hillman told the officer about where the guns were? What did she tell the officers? The record is disputed. There is evidence that they were quote, hidden, that she tried to hide them. Did she tell them that there was a gun hidden in the room where Mr. Holtzman was? No, I don't believe there's any indication of what the locations were. And she was aware that the officer, the deputy had gone into that room to interview Mr. Holtzman, correct? Into a room specifically with the weapon? Didn't the officer interview Mr. Holtzman at some point? Yes. And was that after Ms. Holtzman had told the officer that she was concerned he would kill himself? I believe so. I believe the conversation when she told him that he would kill himself, she was speaking to both of them outside and then Deputy Gregory returned inside briefly to talk to Mr. Holtzman before then leaving. So there's nothing in the record that Ms. Holtzman told the officer that there was a gun hidden in the room where Mr. Holtzman was? Not in the specific room, but I don't see any reason why that level of specificity would be necessary. They were in the home and by isolating him in the home, he had full access to any location. And because of that, that's part of why it was the isolation that put him more at risk. So it's your client's view that under her view of the facts, notwithstanding the officer had interviewed Mr. Holtzman in response to her concerns and determined that he was not, in the officer's view, of suicidal risk, that nonetheless they were acting recklessly by not doing anything more at that point? Accepting the facts in the light of the risk. They were directly told to the extent they want to dispute whether it was actually true is a factual dispute for the jury. So it's not possible under your theory of liability, it's not possible as a matter of law that the officers could, by virtue of their interview of Mr. Holtzman, be assured that there's not a serious risk of suicide. Not at the summary judgment stage. In fact, Defendant Gregory then went and relayed the information that he was suicidal to mobile crisis. I'm sorry, Ms. Hyatt, just I guess a technical question. You know, in these cases, the analysis, of course, is defendant specific. We don't just treat them collectively. And with respect to Officer Walsh, I'm struggling to see how he would have been reckless here. She. Okay, she. That shows you how much I know. But then, I mean, why, I mean, because she left, she got called to, you know, a scene where somebody had stopped breathing, apparently. So why was she reckless in this, on these facts? I mean, the district court actually noted that it was disputed whether she actually needed to leave for that other call, or if someone else was they get a not responding call, and she agrees to help out. How is it? I mean, why is that reckless? Gregory's there. But Gregory wasn't doing anything. If there was any basis to believe that Gregory had been acting adequately and had this under control and was making sure that he was safe, then maybe that would be different. But what we know, accepting all the facts in favor of plaintiff, as we must, at this stage, is that she knew he was at risk of suicide, and that she, along with defending Gregory, isolated him without aid, without his wife, who had been calming him down all day, without EMS, without them, without anything. Isolated him alone in the house with the guns. Okay. May I ask one idea? Of course you can. I was just going to ask if you wanted to. Your argument on the ADA claims that the district court conflated service and accommodation. Can you particularize that? How those terms correspond in this case? Yeah. I think even aside from that, the district court erred by resolving more factual disputes. So even regardless of this other issue, that that was inappropriate for purposes of summary judgment, and it should be remanded at this time. But what plaintiff was identifying as the service was the EMS services. That was available. They were staged. They were ready to go. All they're waiting for was the say-so of the defendants that they could enter and provide mental health services, mental health assessment. And that was denied to Mr. Was it denied on some discriminatory reason? Because it's a failure to accommodate, we don't need a discriminatory reason, just a failure to accommodate. Okay. There isn't any case anywhere I'm aware of that applies the ADA in a non-custodial emergency context. I mean, are you aware of any case that applies it to this? I mean, they got to worry about the ADA with everything else in this context. The Sixth Circuit has not specifically done that. Other circuits have. But the district court didn't find that it didn't apply. And I think the best view of that is not that it doesn't apply, but that that just goes to what is reasonable and what a reasonable accommodation would be in a specific circumstance, whether it's responding to a 911 call, making an arrest, whatever the facts may be. And in this case, there was no exigent circumstances that kept them from being able to provide this service. Okay. Any further questions at this stage? Very well. Thank you, Ms. Hyatt. You'll have your rebuttal. We'll hear from Ms. Nichols. Thank you, Your Honor. Ms. Hyatt, may it please the court. My name is Jeanette Nichols, and I'm here today representing the defendants, appellees in this matter. Your Honor, what plaintiffs are doing is they're attempting to find a constitutional violation under the Substantive Due Process Clause or the Due Process Clause. The district court correctly found that the defendants in the case are entitled to qualified immunity. That's because there was no constitutional violation. And as Judge Ketledge pointed out, the law is not clearly established. The officers would not have been on notice that anything that they did in this type of situation would have violated a constitutional right. So states attempt to bring this claim under the state-created danger theory. They have to show affirmative acts, the risk of harm, and also the culpability of the defendants in this case. I don't want to interrupt you mid-sentence. Go ahead. Obviously, the state-created danger theory is sort of the upper-deck home run, and it's hard to do. I mean, there are just all kinds of serious obstacles to that claim. But what about the state law claims? And why couldn't a jury find that Officer Gregory in particular was reckless in the decisions he made in the, say, you know, 15 minutes before this tragedy happened? Well, Your Honor, with all due respect, I believe that Ms. Hyatt incorrectly stated the standard for recklessness. The Ohio Supreme Court in Anderson, which is still good law, said reckless conduct is characterized by the conscious disregard or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. Okay, but why couldn't a jury? I mean, that's a significant clarification, I suppose, if that is the standard. Why couldn't a jury find, notwithstanding any... They don't have to take the defendant's word for it. Why couldn't they find that, given what everybody was telling him, that he was aware that there was a pretty big risk and he just was sort of indifferent about it? Well, Your Honor, actually, the undisputed facts indicate that, and the plaintiffs agree, that Deputy Gregory did not believe he had probable cause to take Mr. Schultzman into custody for a mental health evaluation. That's different than whether there ought to be somebody in the house with him. Well, if he believed that Mr. Schultzman was at risk of suicide, which would have indicated that he should have been in the house with him, he would have had that probable cause to take him into custody and transport him to a mental health facility for a 72-hour hold. Isn't that what he reported in calling the next group in, that the man was at risk of suicide? Your Honor, with all respect, I think the plaintiffs have mischaracterized the form. It's called the intake form for mobile crisis. It is listed as a suicide, but the reason that it was, was because that was the initial call out for the deputies. Deputy Gregory tells Mobile Intake that they were called by an adult daughter who called because her father was hearing voices and suicidal. And then it goes on to say the deputy stated Mrs. Schultzman is crying uncontrollably because she states her husband is suicidal and hearing voices. However, Mr. Schultzman denies this, stating he heard the radio and mistook it for a voice. He has a history of bipolar, but told the deputy that he is under the care of a psychiatrist and he is doing well. So what follows from that as to whether a jury could find recklessness? Well, this indicates that the deputy, you know, went through all the process that he should have by interviewing Mr. Schultzman. He spoke to him and he related to mobile crisis that he denies that But that just sounds like classic jury argument. I mean, you have to show as a matter of law that, you know, no rational jury on this record could find that Officer Gregory, you know, acted recklessly. And I'm struggling to see that. I mean, the jury, you know, this is all just jury argument. I mean, you know, Mrs. Schultzman's testimony alone arguably would let jury conclude that he was conscious of a really serious risk and for whatever reason, chose not to do much about it. Right? Your Honor, I would respectfully disagree because if he didn't have probable cause to take him into custody, he obviously wasn't conscious of the known and obvious risks. But you see, I mean, that is exactly the kind of argument one would make to a jury. It assumes that there is this sort of perfect logical consistency in all of the defendant's actions and people, particularly in situations like this, that's not always true. I mean, there could be incoherencies, dissonances within his own thinking. It's an argument that, hey, you know, maybe that is what he thought. But I'm struggling to see how, as a matter of law, that ties the jury's hands, notwithstanding all of the testimony of the decedent's wife, that, you know, oh, you know, he's not reckless. But I could be wrong. That's why we're having this conversation. Well, Your Honor, this circuit and various cases have indicated that when you're looking at the same facts for the state law and in qualified immunity, that you can look at those through the lens of qualified immunity. You can look at the state law immunity in Ohio through the lens of qualified immunity. But you can't conflate a state's definition of recklessness with deliberate indifference if the state's definition is different. You are bound by the state law when there is a claim under state law. That's correct. However, you know, there is the conscious disregard or indifference, which the courts have said is, does equate to deliberately indifference. And that's, that's the definition of reckless, which is the lowest standard, you know, for the state immunity. So the conscious disregard or indifference of a known and obvious risk. Your counsel argues that your brief uses an outdated definition of recklessness from Ohio law. And it seems to me that that's correct, that Ohio law does not equate recklessness with the deliberate indifference standard. Do you disagree? Well, Your Honor, the definition that I have continuously quoted is from Anderson, which is a more recent Supreme Court case. However, the case O'Toole, which is what we put in our brief, has not been overruled. In fact, more recent Ohio cases have cited O'Toole. In 2017, the 10th district, which is around Columbus, also used that same standard. They said the standard for proving recklessness is high. And they were talking about, so it's appropriate to enter summary judgment in those cases when the conduct does not indicate a disposition to perversity. And again, that was in an outdated definition. It actually is not. They are still kind of equating that to a disposition to perversity when they're talking about state actors immunity under Ohio state law. So let me ask you a question on the ADA claims that the district court employed a test from an unpublished out of circuit district court, I think California, and your brief does not address the propriety of using that test. What's your position on whether Moore's test is appropriate in this case? I do think that was a good test. It does set some appropriate questions to look at, kind of some elements. I think the court, the district court struggled as have we with this claim because it's such a unusual claim is trying to take the facts of this case and kind of shove them into an ADA violation. And it just doesn't seem to work. Basically what the plaintiffs are saying is that because Mr. Schultzman had a disability, which was a mental health issue, he was denied services of a mental health assessment, which just doesn't seem to make sense. There's a service specifically for disability. It doesn't make sense that they were denied that disability, but beyond... they're available. They could have done some mental health. I know the record is mixed on whether there was really very much more they could do, but it was a service that was available for both mental health and regular health that this defendant, the deceased was denied because Gregory sent them away when their service could have been merely presence, which is what Mrs. Schultzman was asking for. Well, Your Honor, I respectfully disagree and plaintiffs have greatly distorted the facts in this case. EMS is not able to provide a mental health suicide assessment. They're not able to determine if an individual is a danger to themselves or others. What the statement from the deposition the plaintiffs have used to say that they are able to provide the service is the Scott Arthur, who's one of the EMTs said, we can assess someone's mental state. We can assess their physical attributes and we can make recommendations. And when asked about doing that mental assessment, he says, to the extent they won't answer questions correctly. For example, the first question we always ask is their name. Do they know who they are? Do they know where they are? Do they understand the time, the day, the date? And do they understand what's going on around them? This is not an assessment that they're able to do to determine if somebody has suicidal ideations or if they are suicidal. Scott Arthur very clearly states we are not able to put somebody under a 72-hour hold. That is not the type of mental health assessment we're doing. And that they have very, very limited training. I'm sorry. Requesting a 72-hour hold or was her specific request for the service is that he not be left alone. Period. Here's a service. They do some evaluation. Do not leave my husband alone. Well, EMS doesn't do that type of evaluation. And calling EMS in to sit with an individual is beyond their ability to do that. EMS is there for medical purposes. The reason that they're dispatched to any situation where there could possibly be a suicide is obviously for an injury. However, when Deputy Gregory got to the scene, he determined that nobody was injured. It's protocol. And they expected to be called off. We can't have EMS individuals sitting with citizens which could take their time away from other individuals that need their medical services. That's never been done. And that's also imposing a duty on to the state that's just not has never been done before. Requiring them to sit with an individual is, you know, to be somewhat ridiculous and go down a slippery slope, though. Should we call them to babysit our children when we have an emergency? It doesn't follow that she called somebody to sit with him and to make sure he's not alone. Do you think it's not a dispute of fact that when she requested this emergency medical service team to come in the house that they would be rendering medical care by speaking with him about the possibility of being suicidal? First of all, I don't believe that she did request an emergency medical team. And if she had, that would have not been the services that EMS would have provided. What is available is mobile crisis, which it was very new at the time. That was something that Deputy Gregory, even though he didn't believe that Mr. Schultzman was suicidal. I'm sorry, my time is up. May I continue? I just finished my thought. You can take 30 seconds. Even though he didn't believe it was suicidal, he did contact the service and was in the process of relaying information to them and getting them out there to provide that service. So he wasn't denied any services of the mental health variety. Thank you. Okay, thank you. Appreciate your argument. We'll hear a rebuttal. Thank you. Counsel, could you address your understanding of the current definition of recklessness and its relationship to deliberate indifference in the state of Ohio? Absolutely. Defense counsel suggests that Anderson is the case to look at, and we absolutely agree. What Anderson says is that reckless conduct is the second restatement definition, but then the wording they use is a shortened form of it. It's a really long definition, and they do something shorter. So the language that I quoted and that she quoted are both accurate, but where the language captures the objective part is this. So it's reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk. An obvious risk is where it picks up that longer definition that says known or unknown. So Anderson is absolutely the case to look to. That is good law, and that is the standard for recklessness. The cases that talk about perversity are not good law under Anderson. Anderson also makes very clear that the standards for recklessness, wantonness, and wolfiness are not the same and should not be conflated. But for a long time, Ohio courts were conflating those. In fact, in O'Toole, an Ohio Supreme Court case that says that recklessness requires perversity, the citation that they use is to a case talking about wantonness, not recklessness. So that is incorrect under Anderson. In fact, wantonness no longer requires perversity either. Anderson cites to the definition of wantonness from a case called Hawkins v. Ivey, and Ivey was specifically saying, deciding whether perversity was required, and they said that it did not. So that standard does not exist any longer under the recklessness or the wantonness standard. In addition, it is clear that the factual disputes here deserve to go to a jury. The dispute over the adequacy or effectiveness of the EMS services is clearly disputed. We have presented facts that they could have done an assessment and arguing over the value of it is not appropriate for summary judgment. And obviously, with the ADA claim, this isn't comparable to calling to ask someone to babysit. Here, the violation under the ADA is different from the state created danger violation. Here, it isn't about what the effect would have been, it's about the denial, and they denied a service. And that's what's important there. EMS didn't necessarily need to come in and stay there and babysit. The problem was that they were denied. But what the defendants, the individual defendants needed to do was either, if they were to remove sources of aid, then they needed to either stay themselves or not remove that. They could have returned him to the same situation and that wouldn't be a violation of state created danger. If they had actually believed that he was safe and not a risk to suicide, they could have left and then his wife would have been free to stay and keep him calm and do whatever they thought was right. Any further questions from Judge Strantz, Judge Bush? All right, Ms. Hyatt, Ms. Nichols, we thank you both for your arguments and the case will be submitted.